

# NEW ORLEANS POLICE DEPARTMENT
# OPERATIONS MANUAL

## CHAPTER: 41.22

### TITLE: CANINE

**EFFECTIVE:** 08/23/15
**REVISED:** 12/06/15

## PURPOSE

The purpose of this Chapter is to regulate the use of NOPD canines. It sets out the duties and responsibilities of supervisors and canine handlers for use, approval, and deployment of Department canines. The use of canines requires adherence to procedures that control their use of force potential and that direct their specialized capabilities into legally acceptable crime detection, prevention, and control activities.

## POLICY STATEMENT

1. A police canine is primarily a locating tool, using its extraordinary olfactory skills to find a concealed subject. The use of the canine as a force tool, that is to bite a suspect at the time the suspect is located, may or may not be necessary or justified.

2. When a canine is used in an attempt to apprehend a suspect, it is an instrumentality of force and shall only be used consistent with **Chapter 1.3 – Use of Force** and as set out in this Chapter. The Department's use of force Chapter requires that officers shall use the minimum amount of force that the objectively reasonable officer would use in light of the circumstances to effectively bring an incident or person under control, while protecting the lives of the member or others. As applied to canines, the reasonable-necessity standard means a dog bite is justifiable, lawful force **if and only if** the threat to officers or the public is serious—the need for force must be sufficient to justify the injury of a dog bite.

3. The policy of the New Orleans Police Department is to ensure that all Department canines are used in a manner that complies with applicable law and with **Chapter 1.3 – Use of Force**, and that comports with current professional standards. Canine teams will be trained and will demonstrate proficiency such that the handler has total control over the canine's actions.

## DEFINITIONS

**Apprehension—** apprehension shall mean the arrest, capture, or taking into custody of a person.

**Bite—**Physical contact between a canine's teeth and a person or animal. This physical c[ontact] does not need to result in broken or punctured skin to be a bite.



**Canine Apprehension**— Where articulated facts demonstrate that a canine played a clear role in the capture of a person. The mere presence of a canine at the scene of an arrest shall not count as a canine apprehension.

**Canine Bite Ratio**—The number of canine apprehensions that result in a bite, divided by the number of canine apprehensions. Accidental and/or unintentional bites shall be included in the numerator.

**Canine Deployment**— Any situation, except one involving an on-leash article search only, in which a canine is brought to the scene and used in an attempt to locate or apprehend a suspect, whether or not a suspect actually is located or apprehended. This includes all instances in which a canine is removed from the police car; or when a suspect gives up immediately after an announcement is made that if the suspect does not surrender, the canine will be released; or when a canine search is conducted in an effort to apprehend a suspect.

**Canine Handler**—A sworn member of the Department who has been certified by the Department's canine trainer as meeting all requirements of the Department's canine certification program.

**Canine Trainer**—A member of the Department who possesses a current Master K9 Trainer certification from a nationally recognized police canine trainer certification association.

**Contact**—For purposes of this Chapter, contact shall mean an actual physical touching of a person or a person's clothing by the canine during a Canine Deployment. This does not include controlled training, public exhibitions or casual touching by officers or members of the canine handler's family.

**Crime of Violence**— A felony involving the infliction or threatened infliction of serious bodily injury or death.

**Non-Tactical Use of Canine**—The non-aggressive work of a canine when used to search for evidence or missing persons, to guard buildings or equipment, or to detect human remains.

**Serious Use of Force** - Includes the following: **(a)** all uses of lethal force by an NOPD officer; **(b)** all critical firearm discharges by an NOPD officer; **(c)** all uses of force by an NOPD officer resulting in serious physical injury or requiring hospitalization; **(d)** all neck holds; **(e)** all uses of force by an NOPD officer resulting in a loss of consciousness; **(f)** all canine bites; **(g)** more than two applications of an CEW. on an individual during a single interaction, regardless of the mode or duration of the application, and whether the applications are by the same or different officers, or CEW application for longer than 15 seconds, whether continuous or consecutive, and; **(h)** any strike, blow, kick, CEW application or similar use of force against a handcuffed subject

**Tactical Deployment of Canine**—An on- or off-leash search for a suspect conducted by a canine team in an effort to apprehend a suspect. Off-leash searches for suspects may only be conducted when the suspect is wanted for a **crime of violence** or is reasonably suspected to be armed based upon individualized information specific to the subject, conducted by a canine team in an effort to apprehend a suspect.

**GUIDELINES FOR THE USE OF CANINES**

4. A handler shall be available for call-out under conditions specified by the Canine Unit Commander.

5. Police canines are a multi-functional asset that may be used in appropriate circumstances to assist officers in the search for criminal suspects; the detection and location of narcotics and/or explosives; and the location of missing adults or juveniles. Because of their potential to bite, the use of canines by this Department requires adherence to procedures that properly control their use of force potential and that channel their specialized capabilities into legally acceptable activities.

   (a) Each deployment of a canine must be approved by the canine unit supervisor (sergeant or higher), a specially trained SOD supervisor or, if none of those supervisors are available, by a platoon commander prior to deployment.

   (b) The only exception to the requirement that supervisor approval be obtained prior to a canine deployment is under exigent circumstances when the handler is unable to contact a supervisor and, using sound judgment, deems it necessary to deploy the canine to protect himself or herself, other police officers, or citizens, from an immediate threat of serious bodily injury. However, a supervisor shall be notified at the first practicable moment. In such circumstances, the handler will provide a detailed explanation of the exigency in his/her deployment report.

   (c) Off-leash canine deployments, searches, and other instances when there is an increased risk of a canine bite to a suspect shall be restricted to instances in which the suspect is wanted for a crime of violence and the suspect poses an imminent danger of death or serious bodily injury to the officer or to another person.

   (d) Canine handlers will only allow their canines to bite a suspect if the suspect's actions pose a risk of imminent danger to the handler or others; the suspect's actions pose a risk of serious harm to the canine; or the suspect is exhibiting aggressive resistance as defined in NOPD **Chapter 1.3** – Use of Force. (Aggressive resistance does not include concealment and refusal to surrender without more); and the handler is in visual and auditory range of a suspect, except when the suspect is hiding in a confined space (e.g., a crawl space) and refuses to surrender or is escaping. Handlers will not allow their canine to engage a suspect by biting if a lower level of force could reasonably be expected to control the suspect or allow for the apprehension.

   (e) Canine deployments can be authorized for the following assignments provided their use is consistent with the guidelines set out in this Chapter.

      1. Tactical Use of Canines

         Canine tactical deployments shall be limited to the following situations:

         i. <u>Off-leash tactical canine deployments</u>, searches, and other instances in which there is an increased risk of a canine bite shall be used only in instances in which the suspect is wanted for a **crime of violence** as defined in this Chapter or is reasonably suspected to be armed based upon individualized information specific to the subject. Officers are not authorized to deploy a canine off leash in order to subdue a suspect who presents no imminent threat of death or serious injury. Off-leash tactical deployment of a canine is never authorized for the protection of property.

      ii. On-leash tactical deployments may be authorized:

          a. To locate, apprehend or control suspects in instances in which the suspect is wanted for a felony, e.g., a burglary where the suspect is concealed <u>OR</u>

          b. When the behavior of the suspect who is fleeing otherwise involves conduct that presents a serious potential risk of physical injury to the officer or others.

  2. Non-Tactical Use of Canine

    Canines may be employed in non-aggressive work such as:

      i. Searching for missing persons;
      ii. Searching for evidence, narcotics, explosives or other contraband; or
      iii. To detect human remains.

(f) For all tactical uses of a canine to locate a suspect, the canine shall be called off at the instant that a suspect no longer poses a threat.

(g) Canines shall not be used to apprehend suspects known to be juveniles who also pose no immediate threat of serious injury to the officer or others.

## TACTICAL USE OF CANINE TEAMS

## TACTICAL USE - REQUESTS FOR USE OF CANINE

6. Personnel within the Department are encouraged to freely request the use of the canines. When a canine team is requested, the on-scene officers shall:

  (a) Secure the perimeter of the area to be searched and clear the area of civilians;
  (b) Request the canine unit through the dispatcher;
  (c) Request his/her supervisor respond to the scene;
  (d) Refrain from entering the area or any structure to be searched;
  (e) Provide the canine handler with sufficient reasonable suspicion to lead him/her to believe a crime of violence or felony has been committed and the person being sought is the perpetrator, including:

    1. The nature of the crime the subject is wanted for;
    2. A detailed description of the wanted subject including age, gender, race, physical characteristics, and clothing;
    3. Whether the suspect is armed or unarmed;
    4. Whether the suspect has displayed violent behavior; and
    5. All other information known about the subject and the area to be searched.

  (f) Keep radio traffic to a minimum during the canine search; and
  (g) Refrain from excessive use of lights during a canine search to avoid exposing the canine team's position or placing the canine team in jeopardy.

**TACTICAL USE - DEPLOYMENT AUTHORIZATION**

7. A canine handler shall have approval from a canine supervisor (sergeant or higher) or in the absence of a canine supervisor, an SOD supervisor who has received specialized training from the canine unit supervisor on deployment authorization criteria prior to deployment. If the handler is unable to contact a canine unit or SOD supervisor, the handler shall obtain approval from the district platoon commander before the canine can be deployed.

8. Upon receiving a request to approve a canine deployment, the supervisor shall, if at all possible, respond to the scene and consult with the handler and other officers on the scene before making the decision to approve the deployment. If the supervisor is unable to respond to the scene at the time the request is made, he/she may authorize the deployment via radio. Authorization can only be given after the supervisor has been briefed on all the available information needed to make such a decision. In making the decision to approve the deployment, including whether to authorize the deployment to be off-leash, the approving supervisor shall:

    1. Make an assessment of the facts provided by the requesting officer and determine if there is reasonable suspicion or probable cause to believe a felony or crime of violence has been committed and the person being sought is the perpetrator;

    2. Consider the severity of the crime, taking into account that off-leash deployment is prohibited except when the suspect is wanted for a crime of violence as defined in this Chapter or is reasonably suspected to be armed;

    3. Consider the age of the suspect (the subject's perceived age shall be determined by gathering as much information as possible from officers and/or witnesses who observed the subject's physical characteristics, height, weight, etc.);

    4. Determine whether the suspect is or may be armed;

    5. Consider whether the suspect has displayed violent behavior, taking into account that off-leash deployment is prohibited except when the suspect is wanted for a crime of violence or is reasonably suspected to be armed.

    6. Recognize that mere flight alone is insufficient under NOPD **Chapter 1.3** – Use of Force or this Chapter to allow canine deployment.

    7. Ensure that the search area perimeter has been secured.

    8. Assess the likelihood that innocent civilians are located within the secured area.

    9. Consider the potential for injury to officers or the public caused by the suspect if the canine is not utilized.

    10. Attempt to ascertain if the subject has Limited English Proficiency and, <u>if necessary</u>, obtain language assistance to give the "canine warning".

    11. Ensure the handler is thoroughly briefed on all known information.

    12. If authorizing deployment, make clear whether the authorization is for an on- or off-leash deployment.

Case 2:25-cv-00080-BWA-MBN   Document 1-8   Filed 01/09/25   Page 6 of 19

CHAPTER: 41.22                                          Page 6 of 19

## TACTICAL USE - SCENE MANAGEMENT

The supervisor shall:

(a) Ensure that the canine handler has been fully briefed;
(b) Ensure that a perimeter has been established around the area to be searched;
(c) Ensure that the area to be searched has been vacated by all uninvolved civilians and police personnel; and
(d) Attempt to determine if there are any animals present in the area to be searched.

## TACTICAL USE - CANINE HANDLER DEPLOYMENT RESPONSIBILITIES

## TACTICAL USE - PRIOR APPROVAL NECESSARY

9. Prior to any tactical deployment of a canine, the canine handler shall obtain approval from the canine supervisor, a trained SOD supervisor or, if neither is available, the platoon commander of the district wherein the deployment is requested. The canine handler will thoroughly brief the approving supervisor, providing all available information.

10. The canine handler shall, when the use of a canine is requested, activate his/her body worn camera and obtain a thorough briefing from the Department member requesting the canine deployment, to include but not limited to:

(a) A description of the facts and circumstances that justify taking the wanted subject into custody;
(b) A detailed description of the wanted subject including age, gender, race, physical characteristics, and clothing;
(c) The subject's actual or perceived age (i.e. whether the subject is or may be a juvenile). The subject's perceived age shall be determined by gathering as much information as possible from officers and/or witnesses who observed the subject's physical characteristics height, weight, etc.);
(d) Whether the subject poses imminent threat or violence to others;
(e) The severity of the crime;
(f) Whether the subject is armed;
(g) Whether there is reason to believe the subject may not speak or understand English;
(h) Any potential danger to the public and/or other officers at the scene if the canine is released;
(i) The degree of resistance or threatened resistance communicated or shown by the subject;
(j) The potential for escape or flight if the canine is not utilized;
(k) Whether innocent civilians may be located in the search or apprehension area; and
(l) Whether the area perimeter is secure.

**TACTICAL USE - CANINE WARNING ANNOUNCEMENT**

11. Prior to all canine deployments, the handler shall:

    (a) Ensure his/her body-worn camera is activated before the warning is given and before deployment of the canine;
    (b) Notify the Communications Section on the primary dispatch talk group for the District in which the deployment is taking place of the imminent deployment of the canine so that all officers in the area are aware of the deployment. The dispatcher shall announce the time over the radio. The unit and time of the announcement shall be documented by the dispatcher in the call history;
    (c) Unless warnings impose an imminent threat of danger to the canine handler or other officers on scene, issue three (3) loud and clear warnings that a canine will be deployed and advise the suspect to surrender. For example: "Warning, a police canine will be used to search this (area to be searched), if you don't come out, I will release my dog. If approached by the dog, surrender and remain still";
    (d) Obtain prior approval from a supervisor for any unannounced search, and document the reasons for not giving a warning and the name of the approving supervisor in his/her deployment report;
    (e) Where there is reason to believe that a suspect may not speak or understand English, where practicable, obtain language assistance in giving the mandated canine warning. The handler shall announce the warning in English, Spanish and Vietnamese.
    (f) Provide a reasonable amount of time for innocent civilians, other members, and the suspect to come out before commencing with the search.
    (g) Whether or not there is an apprehension, document in the deployment report and any related incident report whether a verbal canine warning was given and, if none was given, the reasons why.

**TACTICAL USE - CONDUCT DURING DEPLOYMENT**

12. Whenever possible, two canine handlers should respond to any request for a canine. When two handlers respond to a request for a service, the primary handler shall search with his/her canine and the secondary handler shall act as backup without his/her canine. If a question arises as to which handler shall be primary, the approving supervisor shall designate the primary handler.

13. When the duration of the search, the size of the area or weather conditions dictate, canine teams may be rotated out as needed and determined by the handler(s) or the supervisor.

14. The canine handler should make every reasonable effort to communicate and coordinate with other involved personnel to minimize the risk of unintended injury.

15. The canine handler shall keep his/her canine within visual and auditory range during deployments at all times, except when the canine clears a threshold (e.g., rounding a corner, entering a room, ascending/descending a stairwell).

16. Canine handlers shall allow their canines to engage a suspect by biting only if:

    (a) The suspect's actions pose a risk of imminent danger to the handler or others; a risk of serious harm to the canine; or the suspect is exhibiting aggressive resistance as defined in NOPD **Chapter 1.3** – Use of Force. (Aggressive resistance does not include concealment and refusal to surrender without more); and
    (b) The handler is in visual and auditory range of a suspect, except when the suspect is hiding in a confined space (e.g., a crawl space) and refuses to surrender or is escaping.
    (c) Handlers will not allow their canine to engage a suspect by biting if a lower level of force could reasonably be expected to control the suspect or allow for the apprehension.

17. When a canine apprehends a suspect by biting, the handler shall call the canine off at the first moment the canine can be safely released, considering that the average person will struggle if seized or confronted by a canine. The handler shall order the dog to release the bite immediately after it is determined that the suspect is unarmed, regardless of whether the suspect is struggling with the dog.

18. Once the individual has been located and no longer reasonably appears to represent a threat or risk of escape, the canine should be secured as soon as it becomes reasonably practical.

**TACTICAL USE - CANINE BITES – MEDICAL ATTENTION**

19. Whenever a canine request results in a deployment, the requesting officer shall ensure an incident report is prepared explaining the circumstances leading up to the request for the assistance of the canine, including a description of the actions of the wanted subject that constituted reasonable suspicion or probable cause to arrest the subject.

20. Whenever an individual sustains a canine bite, the handler or an on-scene officer shall immediately contact an NOPD dispatcher to request Emergency Medical Services response. If EMS determines that additional medical attention is required, the individual shall be transported to a medical facility for treatment.

**TACTICAL USE - REPORTING AND INVESTIGATING CANINE DEPLOYMENTS**

21. Whenever a canine is deployed, a canine handler will prepare a Deployment Report and/or Patrol Data Deployment Report and submit it to the canine unit supervisor before going off-duty. The item number of the report prepared by the requesting officer and the name of supervisor approving the deployment shall be documented in the report.

22. If the canine was used for tracking or searching for a suspect, that fact should be noted in the report. When a canine is involved or on the scene, apprehension may be described as:

    (a) **With Contact** – when the canine physically made contact with the subject.
    (b) **Without Contact** – when the articulated facts demonstrate that the presence or use of the canine was instrumental in the apprehension or surrender of the subject but no contact was made.

23. In all apprehensions when there is canine contact, visible injury to a suspect or a complaint of injury, whether or not a bite occurred, the on-scene supervisor will immediately notify PIB/FIT. The requirements set out in **Chapter 1.3.6 – Reporting and Investigating Use of Force** shall be followed.

24. A canine deployment resulting in a bite is considered a serious use of force and a Level 4 reportable use of force. All serious use of force shall be investigated by PIB FIT.

25. A canine deployment resulting in an apprehension without contact is a Level 2 reportable use of force. In all deployments resulting in an apprehension, the supervisor will ensure a Use of Force Tracking number is obtained and entered on all related documents. The supervisor will conduct a use-of-force investigation in compliance with **Chapter 1.3.6**.

26. For each canine apprehension, the involved handler and all witness officers, which includes the officer requesting the use of the canine, shall complete a Force Statement before the end of shift. In addition to the information that must be included in all Force Statements, a canine handler's narrative documenting a canine apprehension shall include the following:

    (a) The name of the approving supervisor;
    (b) The item number assigned to the body-worn camera video and any other associated item numbers;
    (c) Whether the deployment was on- or off-leash;
    (d) Whether there was contact between the canine and the subject, including contact with the subject's clothing;
    (e) Whether the canine was on or off leash at the time of apprehension;
    (f) A description of where the subject was located;
    (g) Documentation of the duration of the canine's contact with a subject;
    (h) The approximate distance of the canine from the handler at time of apprehension;
    (i) The description of any injuries received by the suspect;
    (j) The description of the circumstances leading up to the decision to deploy the canine; and
    (k) A description of the canine release and securing of the canine.

27. The supervisor of the Canine Unit, with input from the canine trainer, shall evaluate each canine deployment for compliance with this Chapter, state and federal law, and document this evaluation in a written report in accordance with this Chapter.

    (a) The report shall be forwarded to the Commander of the Special Operations Division for review and approval. Any issues identified in the report and the recommended corrections, by either the reviewing supervisor of canine or by the Commander of SOD, shall be noted and addressed in an interoffice correspondence and forwarded to the Deputy Chief of the Field Operation Bureau, within two weeks from the date of the deployment.

    (b) The supervisor of the Canine Unit will obtain, review and attach all documentation associated with the deployment, including, but not limited to, the:
        1. Deployment Report;
        2. Force Statement(s), if required;
        3. Offense Report(s); and
        4. Arrest Report(s).

28. In the event of an unintentional and/or accidental canine bite not in conjunction with a canine deployment, whether on or off duty, the canine handler shall summon his/her supervisor/commander to the scene, request immediate medical treatment, and forward a written report in accordance with this Chapter.

29. Canines controlled by police officers are exempt from regulatory action relating to bites. Canines used by law enforcement agencies are generally exempt from impoundment and reporting requirements to the animal control department. The canine unit trainer will liaise with the animal control department to ensure that information regarding canine bites is not retained by its office.

30. Canine Bite Ratios shall be calculated by the Commander of the Canine Unit and reported to PIB to be included as an element of the Early Warning System and the departments Use of Force Annual Report.

**NON-TACTICAL DEPLOYMENTS OF CANINES**

**NON-TACTICAL USE - NARCOTIC DETECTION CANINES**

31. NOPD may use a narcotic-detection trained canine in accordance with this Chapter, Department search and seizure policies, and current search and seizure laws under the following circumstances:

    (a) To assist in the search for narcotics during a search warrant service;
    (b) Where reasonable suspicion exists, to use the detection canine in support of probable cause to obtain a search warrant; and
    (c) To search vehicles, buildings, bags and any other articles as deemed necessary, when probable cause supports the search.

32. Using a narcotic detection-trained canine to search a person for narcotics is prohibited.

**NON-TACTICAL USE - BOMB/EXPLOSIVE DETECTION CANINES**

33. The use of a trained explosive detection canine team may be warranted due to the high risk of danger to the public and officers. NOPD may use a trained explosive detection canine team in accordance with NOPD search and seizure Chapters and current search and seizure laws under the following circumstances:

    (a) On all bomb/explosive detection requests, department Explosive Ordinance Disposal (EOD) personnel must be notified to respond to the scene prior to the canine explosive detection team conducting any sweeps to:

        1. Assist in the search of a building, structure, area, vehicle or article where an actual or suspected explosive device has been reported or located;
        2. Conduct preventive searches at locations such as special events, VIP visits, official buildings and other restricted areas as approved by the Field Operations Deputy Superintendent or the Superintendent of Police;
        3. Assist with searches at transportation facilities and vehicles (e.g., buses, airplanes and trains) as approved by the Field Operations Deputy Superintendent or the Superintendent of Police; and
        4. Assist in the search of scenes where an explosion has occurred for an explosive device or parts thereof, or search of area where a secondary explosive device is suspected.

(b) At no time shall a detection canine be used to render a suspected device safe or clear.

## NON-TACTICAL USE - GUIDELINES FOR NON-APPREHENSION/CONTRABAND DETECTION USE

34. Because canines have senses far superior to those of humans, they may be effectively utilized to track or search for non-criminals (e.g., lost children, individuals who may be disoriented or in need of medical attention). Only canines trained specifically for this purpose (e.g., Rescue dogs) shall be utilized in such circumstances.

## CANINE UNIT SERGEANT RESPONSIBILITIES

35. The sergeant that supervises the canine unit shall have significant knowledge and experience with police canine operations. He/she shall not be assigned as a handler.

36. The canine sergeant shall:

    (a) Be available to the extent possible to respond to the scene and review requests for canine deployments, ensuring compliance with all requirements for deployment set out in this Chapter.
    (b) Review all canine-related reports to ensure compliance with this Chapter and to identify training issues and other needs of the program;
    (c) Closely review every canine apprehension that results in a bite for tactical and behavioral deficiencies, ensuring that closer supervision and remedial training are provided when needed;
    (d) Liaise with administrative staff and functional supervisors;
    (e) Ensure the canine teams are scheduled for continuous training to maximize the capabilities of the teams;
    (f) Ensure that certified teams maintain performance standards as outlined in the New Orleans Police Department's canine unit's training manual;
    (g) Conduct periodic inspection of canine handler's at-home kennels, yards and homes.
    (h) Disseminate any and all canine equipment including kennels, and collecting same upon the handlers exit out of the unit;
    (i) Oversee the procurement of needed equipment and services for the unit;
    (j) Assist in the selection process of selective handlers; and
    (k) Provide specialized training to all SOD supervisors and district watch commanders who are authorized to approve canine deployments in his absence.
        1. The training shall be conducted annually.
        2. A lesson plan shall be prepared and maintained on file at the Education and Training Division.
        3. Records of attendance at the training session shall be maintained by the Education and Training Division.

**TRAINING**

**CANINE TEAM TRAINING**

37. This Chapter, the Canine Unit SOP and Training Manual are designed to ensure that the handler and canine are trained to the point at which the handler can demonstrate total control over the canine's actions.

38. Canine teams shall be trained and certified in accordance with the training standards set forth by the New Orleans Police Department's Canine Unit, in addition to meeting current recognized national standards. Cross-trained canine teams or those canine teams trained exclusively for the detection of narcotics and/or explosives shall be trained and certified to meet a nationally recognized standards established for such detection canines. Canine teams may not be used outside the scope of their certification.

39. The canine unit trainer shall be responsible for scheduling periodic training for all Department personnel in order to familiarize them with how to conduct themselves in the presence of canines. This shall include training to District supervisors as to pre-deployment considerations for canine use as enumerated under this Chapter.

**CANINE UNIT TRAINER RESPONSIBILITIES**

40. Trainer Selection and Qualifications

    (a) The canine unit trainer shall be selected by the commander of the Special Operations Bureau with input from the supervisor of the canine unit.
    (b) He/she shall possess a current certification as a canine instructor from a nationally recognized police canine training association.

41. The canine trainer is responsible for managing the canine training program, including, but not limited to:

    (a) Reviewing all canine related reports for compliance with this Chapter and to identify training issues and other needs of the program;
    (b) Closely reviewing every canine apprehension that results in a bite for handler tactical deficiencies and canine behavioral deficiencies, ensuring that remedial training is provided as necessary;
    (c) Maintaining, recording, and tracking each canine handler's training records, certifications, health, and canine activities;
    (d) Reviewing of all canine training logs;
    (e) Ensuring that certified teams maintain performance standards as outlined in the New Orleans Police Department's Canine Unit SOP/ Training Manual;
    (f) Training prospective canines and handlers to meet the performance standards and ensure that all teams are certified;
    (g) Recommending and overseeing the procurement of needed equipment and services for the unit;
    (h) Assisting in the scheduling canine-related activities;
    (i) Assisting in the selection process of selective handlers;
    (j) Testing and selecting prospective canines for use by the department;
    (k) Training of new personnel and canines within the canine unit;
    (l) Retraining of handlers and their canines;
    (m) Taking inventory and safekeeping of all training equipment;
    (n) Assisting in the selection process of selective handlers; and
    (o) Maintaining custody and control of the controlled substances and explosive training aides as set forth in this Chapter.

**CONTINUED TRAINING**

42. Each canine team shall be recertified to current nationally recognized standards on an annual basis. Additional training considerations are as follows:

    (a) Canine handlers and supervisors shall receive annual training on **Chapter 1.3 – Use of Force** and this Chapter;
    (b) Canine teams shall receive annual training on current nationally recognized standards;
    (c) Canine teams shall participate in weekly training sessions provided by the unit's canine trainer and monitored by the canine unit supervisor; records of the exercises covered during each training session shall be maintained by the unit;
    (d) Canines and their handlers shall receive a minimum of 16 hours of training every four weeks;
    (e) Canine teams shall demonstrate, to the canine trainer, their compliance with the Unit's performance training standards on a quarterly basis;
    (f) Canine handlers, with approval of the canine unit trainer, are encouraged to engage in additional training;
    (g) To ensure that all training is consistent, no handler is authorized to train to a standard that is not reviewed and approved by the canine trainer;
        1. All canine training shall be conducted while on-duty unless otherwise approved by the canine unit trainer or Canine Unit Commander;
        2. SOD supervisors shall receive annual training to prepare them for making canine deployment decisions; this training shall be coordinated through the Education and Training Division and delivered by canine unit staff; and
        3. All NOPD supervisors shall receive training during the regular annual in-service training program on factors to consider when approving canine deployments.

**FAILURE TO SUCCESSFULLY COMPLETE TRAINING**

43. Any canine team failing to graduate or obtain certification shall not be deployed in the field for those tasks the team has not been certified to perform until the required graduation or certification is achieved. No canine team shall be deployed unless its certification is current.

44. The Canine Unit shall maintain a canine certification program that ensures:

    (a) Canines and their handlers have demonstrated control and proficiency in specific, widely accepted obedience and criminal apprehension exercises.
    (b) The trainer shall maintain detailed records of each canine team showing they have met specific control criteria for each control exercise, and the remedial training that was provided if a canine team was deficient in any area.
    (c) The trainer shall report all training and certification deficiencies to the unit supervisor. The program shall ensure that canines are certified annually by a nationally recognized trainer or organization, and that a canine is not deployed unless its certification is current.

**TRAINING RECORDS**

45. Each canine handler shall maintain a daily training log consisting of canine activities (e.g., training, retraining, and in-service classes).

46. The Canine Unit Trainer shall:

    (a) Record and track each canine team's training, certification, and health records, regardless of whether individual handlers also maintain records.
    (b) Maintain records centrally within the administrative office of the Canine Unit;
    (c) Periodically review handler training logs;
    (d) Track canine deployments and canine apprehensions, calculate and track canine bite ratios on a monthly basis to assess its canine unit and individual canine teams and
    (e) Report canine data and analysis to the Public Integrity Bureau. Canine deployment data shall be included in NOPD's Use of Force Annual Report.

47. The Canine Supervisor shall review the performance of all canine teams. Interventions shall be required for any team whose bite ratio exceeds requirements set forth per this Chapter or Canine Unit SOP/ Training Manual during a six-month period or the entire unit if the unit's bite ratio exceeds that threshold.

**CONTROLLED SUBSTANCE TRAINING AIDS**

48. Controlled substance training aids are required to effectively train and maintain drug detection canines. Controlled substances can also be an effective training aid during training sessions for law enforcement personnel and the public.

49. The Superintendent of Police or his/her authorized designee, at his/her discretion, may authorize an employee to seek a court order to obtain controlled substances from Central Evidence and Property Section and after testing, to be maintained in the employee's possession for training purposes consistent with the requirements set out in this Chapter. This applies to any duly authorized peace officer or civilian drug detection canine trainer working under the direction of a law enforcement agency provided that:

    (a) The controlled substances are no longer needed as criminal evidence, and
    (b) The person receiving the controlled substances, if required by the Drug Enforcement Administration (DEA), possesses a current and valid DEA registration that specifically authorizes the recipient to possess controlled substances while providing substance abuse training to law enforcement or the community or while providing canine drug detection training.

50. As an alternative, the Superintendent of Police or the authorized designee may request narcotics training aids from the DEA by filling out the DEA-225 form at www.deadiversion.usdoj.gov.

**CONTROLLED SUBSTANCE HANDLING PROCEDURES**

51. Due to the responsibilities and liabilities involved with possessing readily usable amounts of controlled substances and the ever-present danger of accidental ingestion of these controlled substances by the canine, the following procedures shall be strictly followed:

(a) All necessary controlled substance training samples only shall be acquired, with the approval of the Superintendent of Police or his/her designee, from the New Orleans Police Department's Central Evidence and Property Section (CE&P) or from the DEA. All controlled substance training samples shall be weighed and tested prior to dispensing to the canine trainer. This shall be done by the NOPD Scientific Criminal Investigations Section (Crime Lab) and documented in an interoffice correspondence from the SCIS Drug Chemistry Unit supervisor to the commander of the canine unit;

(b) The weight and test results shall be recorded and maintained by this Department. This documentation shall be kept on file at the SCIS and the Canine Unit;

(c) The Canine trainer shall be responsible for receiving approved controlled substance training samples from CE&P or the DEA, and shall maintain custody and control of the controlled substances in the Department provided secure storage safe, and shall keep records regarding any loss of, or damage to, those controlled substances. The loss or damage of a controlled substance shall be documented in a Form 105 to the Commanding Officer of SOD, with a copy to PIB, before the end of the tour of duty in which the loss occurred or is discovered. Any discrepancies in weight shall be documented in the canine discrepancy report form maintained by the unit commander;

(d) The commander of the canine unit shall ensure that all controlled substance training samples are inspected, weighed and tested quarterly by the SCIS Drug Chemistry Unit and documented in an interoffice correspondence from the SCIS Drug Chemistry Unit supervisor to the commander of the canine unit. This documentation shall be kept on file at the SCIS and the Canine Unit;

(e) All controlled substance training samples shall be inventoried and properly stored in accordance with best practices to avoid contamination, loss, or damage. They shall be stored in separate safes. Each safe shall require 2 different keys to gain entry. The commander of the canine unit shall have one key and the canine unit trainer shall have the second key. A logbook shall be kept for each safe noting the date, time, persons and items removed. It shall be signed by each person who opens the safe to remove items for training, testing or inventory;

(f) The canine unit trainer shall periodically inspect every controlled substance training sample for damage or tampering and take any appropriate action. Any discrepancies shall be documented in the canine discrepancy report form maintained by the unit commander;

(g) Any unusable controlled substance training samples shall be returned to Central Evidence and Property or to the dispensing agency for appropriate disposal along with an interoffice correspondence explaining the history and use of the returned item. This documentation shall be kept on file at the Central Evidence and Property Section and the Canine Unit;

(h) All narcotics training aids, when not in use, shall be properly stored in the safe provided at the canine unit appropriate for the type of materials they contain;

(i) The Commander of SOD, along with the Canine Unit Commander and the Canine Trainer shall conduct an annual inspection of the safes, logbooks, and all contents. Special note shall be made to ensure that all the documentation on the narcotics reflecting their weight and uses is present and that the recording system and camera(s) function properly. The results of this inspection shall be forwarded by the Commander of SOD through the chain of command to the Superintendent. A copy of the report shall be kept on file at the canine unit and SOD.

**EXPLOSIVES TRAINING AIDS**

52. Explosives training aids designed specifically for canine teams should be used whenever feasible. Due to the safety concerns in the handling and transportation of explosives, inert or nonhazardous training aids should be employed whenever feasible. The use of explosives or destructive devices for training aids is subject to the following requirements:

    (a) All explosive training aids, when not in use, shall be properly stored in a secure facility appropriate for the type of materials they contain;
    (b) An inventory ledger shall be maintained to document the type and quantity of explosives training aids held by the canine unit;
    (c) The canine unit sergeant shall be responsible for verifying the explosives training aids on hand against the inventory ledger once each quarter;
    (d) Only members of the canine unit shall have access to the explosives training aid storage facility; and
    (e) A primary and secondary custodian shall be designated to minimize the possibility of loss of explosives training aids during and after the training. Generally, the handler will be designated as the primary custodian while the trainer or second person on-scene will be designated as the secondary custodian.

53. Any lost or damaged explosives training aids shall be immediately reported in writing to the canine unit supervisor and to the Commander of SOD, who will determine if any further action will be necessary. Any loss of explosives shall immediately be reported to the Deputy Secretary of the Department of Public Safety and the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) (R.S. 40:1472.7).

**REPORTING INJURIES TO CANINES**

54. In the event that a canine is injured, the injury shall be immediately reported to the Canine Unit Commander.

55. Depending on the severity of the injury, the canine shall either be treated by the designated veterinarian or transported to a designated emergency medical facility for treatment. If the canine has a serious medical emergency and the handler and canine are out of the area of the designated veterinary facilities, the handler may use the nearest available veterinarian. The handler shall notify the designated and contracted veterinary facility as soon as possible if this occurs, as well as notify the Canine Unit Commander.

56. In the event of serious injury or death of a Departmental Canine, all canine handlers and canine supervisory personnel shall comply with notification procedures set forth in the Canine Unit SOP/ Training Manual, ensuring that notifications are made to the Field Operations Deputy Superintendent, PIB Deputy Superintendent and the Superintendent of Police.

57. The Canine Supervisor shall document the incident via an Electronic Police Report Form (EPR) within twenty-four hours of the incident.

**ASSIGNMENT OF CANINES**

58. The canine teams shall be assigned to the Special Operations Division of the Field Operations Bureau and used to aid and assist all personnel of the New Orleans Police Department.

59. Canine teams should function primarily as support units. However, they may be assigned by the Canine Commander to other functions based on the needs of the watch at the time.

60. Canine teams should not be assigned to handle matters that will take them out of service for extended periods of time unless necessary and approved by the commander of the canine unit.

**REQUEST FOR ASSISTANCE FROM OTHER AGENCIES**

61. The Commander of the Special Operations Division must approve all requests for canine assistance from outside agencies subject to the following provisions:

    (a) Canine teams shall not be used for any assignment that is not consistent with this Chapter;
    (b) Canine teams shall not be called out while off-duty or used outside the jurisdiction of the New Orleans Police Department unless authorized; and
    (c) It shall be the responsibility of the canine handler to coordinate with outside agency personnel in order to minimize the risk of unintended injury.

62. Unless directed by the Canine Commander, NOPD shall not request or use the services of any canine, whether owned by NOPD or any other jurisdiction, unless it first ensures that the canine is controllable and meets the standards required by this Chapter. The Canine Unit Commander shall document, in any related reports, when a canine from another jurisdiction is used.

**REQUESTS FOR PUBLIC DEMONSTRATIONS**

63. All canine demonstrations shall be subject to authorization from the Deputy Superintendent for the Field Operations Bureau or Superintendent of Police.

64. Canine demonstrations, when authorized, shall follow this Chapter and Canine Unit SOP/ Training Manual.

65. Handlers shall not demonstrate any apprehension work to the public unless specifically authorized to do so by the canine unit trainer.

**SELECTION OF CANINE HANDLERS**

66. To meet the minimum qualifications for the assignment of canine handler, the handler shall:

    (a) Be a New Orleans Police Department Officer with a minimum of 5 year's experience as a New Orleans Police Officer;
    (b) Have a disciplinary history free of allegations of excessive force;
    (c) Comply with use of sick and annual leave;
    (d) Have maintained his/her physical fitness and meet the Canine Unit's physical agility standards as set out in their SOP;
    (e) Have and maintain a single-family residence with a minimum 5 foot high fence, locking gates and sufficient space for the construction of a department provided and approved kennel;
    (f) Successfully complete all phases of basic handler's course required by the Canine Unit;

(g) Live within reasonable travel time (as determined by the Commander of the Special Operations Division) from the New Orleans City limits, in accordance with the Department's current domicile regulations; and

(h) Agree to be assigned to the position for a minimum of three years (unless promoted).

**CANINE HANDLER CANINE CARE AND EQUIPMENT RESPONSIBILITIES**

67. The handler shall ultimately be responsible for the health and welfare of the canine. The handler shall ensure the canine receives proper nutrition, grooming, training, medical care, affection and proper living conditions.

68. The handler's responsibilities include:

    (a) The handler shall not expose the canine to any foreseeable and unreasonable risk of harm unless required by a particular application;
    (b) The handler shall maintain all Department equipment under their control in a clean and serviceable condition;
    (c) When a handler takes approved vacation or extended leave, and is not able to care for his/her canine, the assigned canine shall be housed/kenneled at the Canine Unit Compound; the assigned canine vehicle shall be maintained at the Department canine facility;
    (d) Handlers shall permit the canine unit trainer to conduct spontaneous on-site inspections of affected areas of their residence, as well as the canine unit, to verify that conditions and equipment conform to this Chapter;
    (e) Any changes in the living status of the handler that may affect the lodging or environment of the canine shall be immediately reported to the canine unit trainer and the Commander of the Canine Unit;
    (f) When off duty, canines shall be maintained in kennels provided by the City at the homes of their handlers; when a canine is kenneled at the handler's home, the gate shall be secured with a lock; when off-duty, canines may be let out of their kennels while under the direct control of their handlers;
    (g) The canine should be permitted to socialize in the home with the handler's family for short periods of time and under the direct supervision of the handler;
    (h) Under no circumstances shall the canine be lodged at another location unless previously approved by the canine unit trainer or Canine Unit Commander;
    (i) When off duty, handlers shall not involve their canines in any activity or conduct unless approved, in advance, by the canine unit trainer or Canine Unit Commander;
    (j) As soon as practical the canine handler should advise the canine unit trainer or supervisor of any illness or injury involving his/her assigned canine;
    (k) Handlers shall muzzle their canines prior to entering the designated veterinary facility;
    (l) Handlers shall maintain a comfortable ambient temperature for current weather conditions anytime the canines are in their vehicles; when leaving a canine in the canine vehicle unattended, the handler shall ensure that the vehicle's heat sensor unit controls are placed in the proper operating positions; ensure vehicle is locked and secure; and shall make periodic checks on the canine, and provide breaks to the canine; and
    (m) Handlers shall maintain their physical fitness at all times.

## MEDICAL CARE OF THE CANINE

69. Non-emergency medical care of the canine shall be coordinated through the canine unit trainer.

70. All non-emergency medical attention for the canine shall be rendered by the designated canine veterinarian.

71. The handler shall report any indication that a canine is not in good physical condition to the canine unit trainer or the Canine Commander as soon as practicable.

72. The handler shall notify the canine unit trainer as soon as practicable when emergency medical care for the canine is required.

73. Depending on the severity of the illness or injury, the canine shall either be treated by the designated veterinarian or transported to a designated emergency medical facility for treatment. If the handler and canine are out of the area, the handler may use the nearest available veterinarian. The handler shall notify the designated and contracted veterinary facility as soon as possible if this occurs, as well as notify the Canine Unit Commander.

## CANINES IN PUBLIC AREAS

74. When not specifically deployed pursuant to this Chapter, all canines shall be kept on leashes when in areas that allow access to the public. Exceptions to this rule would include specific law enforcement operations for which the canines are trained or approved demonstrations.

75. Canines shall not be left unattended in any area to which the public may have access.

76. When the canine unit is left unattended in a vehicle, all windows and doors shall be secured in such a manner as to prevent unauthorized access to the canine. The handler shall also ensure that the unattended unit remains habitable for the canine.

77. Handlers shall maintain control over their canines that are in public areas at all times.